**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

VERONICA SHAND,                          *

     **Plaintiff,**                          *

v.                                        *          **Case No.: PWG-19-115**

CHARLES E. SMITH LIFE               *
    COMMUNITIES, HEBREW HOME
    OF GREATER WASHINGTON,          *

     **Defendant.**                          *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION AND ORDER**

Veronica Shand, who is representing herself in this lawsuit, claims that, while she was working for Charles E. Smith Life Communities, Hebrew Home of Greater Washington ("Hebrew Home") as a geriatric nursing assistant, her employer failed to grant her request for a religious accommodation. Compl., ECF No. 2. In response, she resigned, and she views her resignation as a constructive discharge. *Id.* at 1, 3. Believing that Hebrew Home's denial of her request and the constructive discharge were in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), Shand filed suit in state court, *id.*, and Hebrew Home removed the suit to this Court, ECF No. 1. Hebrew Home has moved for summary judgment, arguing that it is a religious organization and therefore "exempt from Title VII's prohibition against employment discrimination based on religious beliefs under 42 U.S.C. 2000e-1(a)." ECF No. 17.[1] Shand has

---

[1] In accordance with the Letter Order Regarding the Filing of Motions, ECF No. 9, Hebrew Home filed a pre-motion letter, ECF No. 14, and I held a conference call to set a briefing scheduling for Defendant's proposed dispositive motion, ECF No. 18. Hebrew Home submitted its Motion for Summary Judgment along with a Memorandum in Support, ECF No. 17-2. In lieu of an opposition, and without seeking leave to file a cross-motion, Shand filed a Motion for Summary

filed a cross-motion for summary judgment, in which she objects to Hebrew Home "being exempt from [T]itle VII's prohibition against employment discrimination based on religious belief." Pl.'s Opp'n & Mot. 1. Because Title VII's religious organization exemption applies to Hebrew Home, Defendant's Motion is granted and Shand's is denied.

## **Standard of Review**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). "A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Cole v. Prince George's Cty.*, 798 F. Supp. 2d 739, 742 (D. Md. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 251.

---

Judgment in response, ECF No. 21 (Pl.'s Opp'n & Mot.). Hebrew Home filed a Reply, ECF No. 24. Briefing has concluded, *see* Loc. R. 105.2(a), (c), and a hearing is not necessary, *see* Loc. R. 105.6.

While this Court is required to liberally construe documents that self-represented litigants file and hold them to a less stringent standard than those that attorneys draft, *see Erickson v. Pardus*, 551 U.S. 89,94 (2007); *Estelle v. Gamble*, 429 US. 97, 106 (1976), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court, *see Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Rather, the Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

## Discussion

Pursuant to Title VII, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).

> Title VII is not without bounds however, and has long included an exemption for religious organizations in certain circumstances. Specifically, § 2000e–1(a) provides that:
>> This subchapter [of Title VII] shall not apply to ... a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

*Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 192 (4th Cir. 2011) (quoting 42 U.S.C. § 2000e-1(a)). The term "employment" in this statute is "not limited to hiring and firing decisions." *Id.* at 193. Rather, it covers claims that "arise from [an employee's] 'state' of 'being employed,'" such as "discharge, harassment, and retaliation." *Id.* (quoting Black's Law Dictionary 9th ed.). Indeed, "§ 2000e-1(a) exempts religious organizations . . . from [employees'] claims of

religious discrimination," *id.* at 196, as well as from claims of discriminatory discharge, *id.* at 192–93.

Failure to accommodate is a form of religious discrimination. *See Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 205 (4th Cir. 2018) (citing *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996)). Consequently, if Hebrew Home is a religious organization, then it is exempt from both Shand's failure to accommodate claim and her constructive discharge claim. *See Kennedy*, 657 F.3d at 192–93, 196.

Neither Title VII, the Fourth Circuit, nor this Court has defined "religious organization" or "religious institution" for purposes of the religious organization exemption, 42 U.S.C. § 2000e-1(a). Yet, the Fourth Circuit has held that, for purposes of the "ministerial exception" of the FLSA, which is "coextensive in scope" with the ministerial exception in Title VII (another exception to Title VII, available when the organization qualifies as a religious organization and the plaintiff qualifies as a minister), a religious organization is one whose "mission is marked by clear or obvious religious characteristics." *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.,* 363 F.3d 299, 306, 310 (4th Cir. 2004); *see also Curl v. Beltsville Adventist Sch..*, No. GJH-15-3133, 2016 WL 4382686, at *8 (D. Md. Aug. 15, 2016) (citing *Shaliehsabou*).

Hebrew Home describes itself as follows:

1.  Hebrew Home is a nursing home located in Rockville, Maryland. *See* Ex. 1 (Declaration of Terri Tanner-Hill) at 3. Hebrew Home is a non-profit charitable and religious corporation exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *Id.*

2.  The primary purpose of Hebrew Home, as reflected in its By-Laws, is to:

    (A)  provide, establish and maintain services, programs, and facilities for older adults consistent with the Corporation's Jewish values;

    (B)  participate in the development of social welfare and health programs primarily benefiting older adults or the infirmed consistent with the Corporation's Jewish values . . . .

*Id.* at ¶ 4 and Exhibit A thereto (Excerpt from By-laws).

3.     Accordingly, Hebrew Home endeavors to provide residents with a "Jewish home," meaning a home that complies with the requirements of Jewish law and provides a Jewish environment for its residents. *See* Ex.l (Tanner-Hill Decl.) at ¶ 5. It is the goal of Hebrew Home to facilitate the observance of Jewish law and customs. *Id.* In furtherance of this goal, Hebrew Home provides kosher meals to its residents, prepared in accordance with Jewish dietary laws. *Id.* at ¶ 7.

4.     To ensure that meals are prepared in accordance with Jewish dietary laws, known as "kashrush," Hebrew Home employs kosher food inspectors, known collectively as "Mashgichim," who generally have obtained their knowledge of the laws of kashruth through experience and study at a "yeshiva" (rabbinical seminary). *Id.*

. . .

8.     Also in accordance with the laws of kashruth, the Mashgiach must ensure the maintenance of separate kitchens for meat, dairy and "pareve" (food which is neither meat nor dairy, e.g. fruits, vegetables or fish). *Id.* at ¶ 11. Special cleaning and other preparations take place during Passover. *Id.* Among other things, vending machines on the premises are rendered unusable, and Jewish dietary laws are enforced with regard to all catering options at Hebrew Home, not only residents' meals. *Id.*

9.     Hebrew Home also provides a synagogue on its premises, with twice-daily religious services. *Id.* at ¶ 6. Hebrew Home observes the Jewish Sabbath, and an ordained rabbi is employed as a full-time employee to conduct religious services and educational programs, and provide counseling to residents. *Id.* Jewish holidays are celebrated in accordance with Jewish laws and traditions. *Id.* A "mezuzah," or small case containing a section of the Torah (Hebrew Bible), is affixed to the doorpost of every resident's room in Hebrew Home in accordance with Jewish law. *Id.*

10.     When hired, each new employee receives a copy of the CESLC employee handbook. *Id.* at ¶ 12 and Exhibit B thereto (Handbook Excerpts). In it, employees are informed that the organization's mission is "to fulfill Jewish values by providing a continuum of quality services for older adults and their families and to affirm our commitment to the dignity of each individual." *Id.*

. . .

13.     Employees receive further instruction concerning Hebrew Home's Jewish mission and values during new employee orientation. *See* Ex. 1 at 15.

14.     Hebrew Home also publicizes its mission on its website, at httos://www.smithlifecommunities.org/about/ The website advises the public that the organization's mission "is to fulfill Jewish values by providing a continuum of quality services for older adults and their families and to affirm our commitment to

the dignity of each individual. . . . *See* Ex. 1 at 16 and Exhibit C (Website Page, About CESLC)[.]

Def.'s Mem. 2–5.  Significantly, the Fourth Circuit considered whether the same defendant— Hebrew Home—was a religious organization in *Shaliehsabou*, albeit in the context of the ministerial exception to the FLSA, which is "coextensive in scope" with the ministerial exception to Title VII.  363 F.3d at 306, 310.  In concluding that Hebrew Home is a religious organization, it noted a similar set of characteristics to those Hebrew Home identified above.  *See id.* at 310– 11.  It reasoned:

> [A]n entity can provide secular services and still have substantial religious character. The Hebrew Home is religiously affiliated: its By–Laws define it as a religious and charitable non-profit corporation and declare that its mission is to provide elder care to "aged of the Jewish faith in accordance with the precepts of Jewish law and customs." (J.A. at 101.) Pursuant to that mission, the Hebrew Home maintained a rabbi on its staff, employed mashgichim to ensure compliance with the Jewish dietary laws, and placed a mezuzah on every resident's doorpost. Although we do not have to decide the full reach of the phrase "religious institution," we hold that the phrase includes an entity such as the Hebrew Home. Accordingly, we conclude that the Hebrew Home is a religious institution for purposes of applying the ministerial exception to the FLSA.

*Id.*

Further, while Shand objects to Hebrew Home "being exempt from [T]itle VII's prohibition against employment discrimination based on religious belief," she does not point to any evidence (or even argue) that Hebrew Home is not a religious organization.  *See* Pl.'s Opp'n & Mot. 1.[2]  Thus, Hebrew Home's description of itself is undisputed.  *See id.*  Indeed, Shand acknowledges that Hebrew Home's "mission is to care for its residents in accordance with the

---

[2] Instead, she contends that "[T]itle VII's [religious organization exemption] should be taken to [C]ongress for overturn in favor to religious individuals." Pl.'s Opp'n & Mot. 1.  Shand may seek legislative action from Congress, but this Court cannot enact legislative reform.  *Compare* U.S. Const. Art. III § 2, cl. 1 (establishing jurisdiction of federal courts), *with* U.S. Const. Art. I § 1 (vesting legislative power in Congress).

precepts of Jewish laws and customs"; it had "rules and regulations" regarding "serving kosher meals" and "Jewish dietary"; and "the entire building would pause for singing and praying over the loud speaker." *Id.* She stated that she would "escort the Jewish patient to the religious services on Friday evenings." *Id.*  Given the Fourth Circuit's conclusion in an analogous context with regard to the very defendant before me now, and the undisputed facts on the record before me, I find that Hebrew Home's "mission is marked by clear or obvious religious characteristics," such that it  is a religious organization for purposes of the religious organization exemption to Title VII. *See Shaliehsabou*, 363 F.3d at 310.   Accordingly, it is exempt from both Shand's failure to accommodate claim and her constructive discharge claim.  *See Kennedy*, 657 F.3d at 192–93, 196.

## **ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is, this 23rd day of September, 2019, hereby ORDERED that

1. The Motion for Summary Judgment that Defendant Charles E. Smith Life Communities, Hebrew Home of Greater Washington ("Hebrew Home") filed, ECF No. 17, IS GRANTED;

2. The Motion for Summary Judgment that Plaintiff Veronica Shand filed, ECF No. 21, IS DENIED;

3. Judgment IS ENTERED in Hebrew Home's favor; and

4. The Clerk SHALL CLOSE this case and MAIL a copy of this Memorandum Opinion and Order to Plaintiff Veronica Shand.

_____/S/_____
Paul W. Grimm
United States District Judge

lyb